IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MIDWEST TOWING & RECOVERY,
INC.,**

               **Plaintiff,**

    **v.**

**CITY OF LANCASTER,** *et al.***,**

               **Defendants.**

                                       **Civil Action 2:09-cv-1142**
                                       **Judge Smith**
                                       **Magistrate Judge Abel**

## OPINION AND ORDER

Plaintiff Midwest Towing & Recovery, Inc., brings this action against Defendants City of Lancaster, Ohio ("Defendant Lancaster" or the "City"), Michael J. Courtney, and Dave Bailey, asserting federal preemption, deprivation of property interest without due process, and interference with economic relations, in connection with Plaintiff's removal from a towing service rotation list managed by Defendants.  This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 14).  This motion has been fully briefed and is ripe for disposition.  For the reasons that follow, the Court **GRANTS** Defendants' motion as to Plaintiff's federal claims, and **DISMISSES** without prejudice Plaintiff's state law claim.

## I.    Background

In December 2009, Plaintiff initiated this action against Defendants.  Plaintiff is an Ohio corporation, which maintains its principal place of business in the City of Lancaster, Fairfield County, Ohio.  Defendant Lancaster is an Ohio municipality located within Fairfield County.

Defendant Courtney is employed by Defendant Lancaster as its Service-Safety Director.

Defendant Bailey is employed by Defendant Lancaster as its Chief of Police.

Plaintiff's business services include vehicle towing, recovery, and storage services to, and for the benefit of, the general public, including long-term customers. (Compl. ¶ 10). Defendants maintained and exercised control over a "tow rotation list" for the towing, recovery, and storage of vehicles in the City of Lancaster. *Id.* at ¶ 11. The tow rotation list consists of businesses that provide towing services (the "towing companies"). *Id.* at ¶ 12. In order to be placed on the tow rotation list, a towing company must apply for inclusion by submitting the Lancaster Police Department's "Towing Service Rotation List Application and Agreement" to the City. *Id.* at ¶ 14. Defendants managed the tow rotation list and determined which towing companies were included or removed from the tow rotation list. *Id.* at ¶ 13.

In November 2002, Plaintiff submitted an application to participate on the tow rotation list. In April 2003, the application was initially approved by Defendant Bailey, and subsequently was approved by Earl Strawn, who at the time was serving as the Service-Safety Director. (Comp., Ex. A). At all relevant times, Plaintiff substantially complied with the requirements applicable to towing companies on the tow rotation list (the "towing criteria"). *Id.* at ¶ 15. The towing criteria affected the pricing, routes, and service of the towing companies. *Id.* at ¶ 18. At some point in time, Defendants, relying upon the towing criteria applicable to the towing companies on the tow rotation list, terminated Plaintiff's participation on the tow rotation list and refused to subsequently include Plaintiff on the list. (Compl., ¶¶ 20 and 26). By their actions, Defendants interfered with Plaintiff's business relationships with its customers. *Id.* at ¶ 19.

Plaintiff has been in business for over 20 years and has established business relationships

with customers, and Defendants knew of these business relationships. *Id.* at ¶¶ 29 and 30.

Plaintiff alleges that its customers made requests to Defendants to have Plaintiff tow and store the

customer's vehicles from accident and/or breakdown sites under the general jurisdiction and

control of Defendants. *Id.* at ¶ 32. Defendants denied these customers' requests for Plaintiff's

towing and storage services and required them to accept and pay for services provided by other

competing towing companies. *Id.* at ¶ 36. Defendants interfered with Plaintiff's business

relationships because they "mandated and/or negotiated pricing for the Towing Services between

Plaintiff and said customers." *Id.* at ¶ 37. Plaintiff alleges that it has been damaged as a result of

Defendants' actions. *Id.* at ¶¶ 21, 27, and 40.

Plaintiff brings a claim of federal preemption based on 49 U.S.C. § 14501, a claim under

42 U.S.C. § 1983 for the deprivation of a property interest without due process of law, and a

state law interference with economic relations claim. In May 2010, Defendants filed a motion for

judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 14). As it

relates to the briefing of this motion, Defendants filed a motion for an extension of time to file

their reply memorandum (Doc. 18). These motions have been briefed and are ripe for disposition.

**II.     Defendants' Motion for Extension of Time to File Reply Memorandum**

Preliminarily, the Court will address Defendants' motion, filed pursuant to S. D. Ohio Civ.

R. 7.3(a), for an extension of time to file their reply memorandum, in support of their motion for

judgment on the pleadings, by July 22, 2010 (Doc. 18). Plaintiff consented to the extension, and

the reply memorandum was filed July 16, 2010. Accordingly, Defendants' motion for an

extension is **GRANTED**, and the Court has reviewed and considered the reply memorandum in

reaching its decision on the motion for judgment on the pleadings.

### III.    Defendants' Motion for Judgment on the Pleadings

#### A.    Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."  It is well-settled that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6).  *See, e.g., Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (noting that where a Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted is raised by a Rule 12(c) motion for judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the

light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, at 1950.  While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' "  *Iqbal*, at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).  In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Accordingly, the Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  *Little v. UNUM Provident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio

2002) (Graham, J.) (citing *Rauch*).  Stated differently, "[f]or purposes of a motion for judgment

on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must

be taken as true, and the motion may be granted only if the moving party is nevertheless clearly

entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)

(internal citations and quotation marks omitted).

### B.      Discussion

Plaintiff asserts three claims against Defendants.  First, Plaintiff alleges that Defendants

have improperly regulated its towing services in the City (federal preemption claim).  Second,

Plaintiff alleges that Defendants have deprived it of a property interest without due process of law

(§ 1983 claim).  Third, Plaintiff presents a state law claim of tortious interference with business

relationships (interference claim).  Defendants argue that all three of Plaintiff's claims are barred

because it agreed not to sue them for conduct relating to the implementation and administration of

the vehicle towing service rotation policy, that federal preemption principles did not preclude

Plaintiff's removal from the tow rotation list under the Towing Service Rotation Agreement, and

that 49 U.S.C. § 14501 does not provide to Plaintiff a right enforceable under 42 U.S.C. § 1983.

Plaintiff argues that Defendants improperly rely on an agreement the terms of which are

preempted under federal and state law.  Plaintiff further argues that the Towing Service Rotation

Agreement does not bar its claims against Defendants, and that the terms of the agreement violate

49 U.S.C. § 14501(c) and Ohio Rev. Code § 4921.30.

### 1.      Agreement Not to Sue

The Court will first briefly address the covenant not to sue provision (the "no sue"

provision) of the agreement between Plaintiff and the City of Lancaster.  The Towing Service

Rotation Agreement between these parties contains a provision which states as follows: "By

signing this agreement, you are agreeing not to sue the Lancaster Police Department, the City of

Lancaster, its other departments or employees for any matters related to the implementation or

administration of this vehicle rotation policy or for any future matters related to individual tows or

impounds." (Doc. 2-1, ¶ 31). Defendants argue that this provision bars all three of Plaintiff's

claims.

Plaintiff does not allege that it did not agree to this provision of the Towing Service

Rotation Agreement, or that this provision is somehow ambiguous. Plaintiff does essentially

argue, however, that enforcement of this provision would violate public policy. Indeed, the "no

sue" provision is very broad and reasonably could be viewed as a prospective waiver of

substantive rights. Defendants cite *Town of Newton v. Rumery*, 480 U.S. 386 (1987), as a case in

which there was a waiver of a right to sue. But *Rumery* involved the upholding of a waiver of a §

1983 action after the occurrence of the events comprising the alleged constitutional violation. As

noted by the Seventh Circuit Court of Appeals in *Cange v. Stotler & Co.*, 826 F.2d 581, 587 n.4

(7th Cir. 1987): "The waiver of substantive statutory rights after the violation has occurred is

akin to a settlement of the dispute, but prospective waivers of statutory rights tend to encourage

violations of the law by notifying the wrongdoer in advance that he or she can act with impunity;

therefore prospective waivers uniquely can violate public policy." Nonetheless, the Court will not

directly resolve the operative effect of this provision because Plaintiff's claims must be dismissed

independent of this provision.

        **2.**       **Federal Preemption Claim**

The federal preemption doctrine is based on the Supremacy Clause of the United States Constitution.  *State Farm Bank v. Reardon*, 539 F.3d 336, 341 (6th Cir. 2008).  The Supremacy Clause provides that the Constitution, federal law, and all treaties "shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, Cl. 2.  Preemption exists under the Supremacy Clause where: (1) Congress expressly intended to preempt state law, *see Jones v. Rath Packing Co.*, 430 U.S. 519 (1977); (2) there is actual conflict between federal and state law, *see Free v. Bland*, 369 U.S. 663 (1962); (3) compliance with both federal and state law is impossible, *see Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); (4) there is implicit in federal law a barrier to state regulation, *see Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983); (5) Congress has "occupied the field" of the regulation, leaving no room for a state to supplement the federal law, *see Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947); or (6) the state statute forms an obstacle to the realization of Congressional objectives, *see Hines v. Davidowitz*, 312 U.S. 52 (1941).  *See generally, National Fuel Gas Supply Corp. v. Public Service Comm. of New York*, 894 F.2d 571 (2nd Cir. 1990); *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988).

Plaintiff alleges that Defendants have engaged in conduct that is preempted under federal law.  More particularly, Plaintiff argues that the operation of the City's towing policy regulated towing services in violation of federal law because it affected the pricing, route, or service of towing companies like Plaintiff.  Similarly, Plaintiff alleges that Defendants wrongfully terminated its participation on the tow rotation list because the City's towing service rotation policy improperly regulates towing within the City.  In this regard, Plaintiff argues that Defendants'

regulation of its operations is impermissible in view of 49 U.S.C. § 14501 and Ohio Rev. Code §

4921.30.

49 U.S.C. § 14501(c) provides in pertinent part as follows:

Motor carriers of property.--

(1) General rule.--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

(2) Matters not covered.--Paragraph (1)--

(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

(B) does not apply to the intrastate transportation of household goods; and

(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

And Ohio Rev. Code § 4921.30 provides as follows:

Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter.  Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.

The pleadings demonstrate that it is the policy of Defendant Lancaster to contract with towing companies based within the city limits to provide towing services at the direction of city police officers or other agents.  The City has implemented this policy by using the towing service rotation application process, whereby towing companies apply for placement on the towing rotation list.  The towing companies approved and placed on the towing rotation list are used on a rotational basis to provide towing services for the City.  Under this policy, the vehicle owner pays for the towing services.  In opposition to Defendants' motion to dismiss, Plaintiff asserts that the towing rotation list is not limited to "non-consensual" tows.  But the Towing Service Rotation Agreement concerns "towing services," which means "the towing, storage or impoundment of motor vehicles in accordance with law" and "the providing of service assistance to disabled vehicles," "*at the direction of* any City Police Officer or other authorized agent of the City." (Emphasis added) (Doc. 2-1).  Thus, the agreement concerns circumstances in which "towing services" are performed "at the direction of the" City of Lancaster.

It is a function of Ohio municipalities to maintain and repair the streets within the area of the municipal corporation.  Ohio Rev. Code § 723.01.  Furthermore, except as provided under Ohio Rev. Code § 5501.49,[1] a municipality is also empowered to supervise and control the streets within the municipality.  *Id.*  A municipality conceivably could contract with one company to meet its towing needs.  Alternatively, the municipality could contract with multiple companies for these services; this is what Defendant Lancaster has done.  As reflected by the terms of the Towing Service Rotation Agreement, Defendant Lancaster has taken steps to ensure that, when a vehicle

---

[1] Section 5501.49 outlines the State of Ohio's responsibility as to the construction, maintenance, repair, and operation of bridges located on the state highway system within a municipal corporation.

must be towed at the City's direction, it is towed under certain conditions relating to pricing, safety, and efficiency.

Plaintiff does not allege that the City sought to regulate towing services not performed at the direction of the City.  Nor does Plaintiff allege that, as part of its towing rotation policy, the City directs the performance of towing services when it lacks control over the circumstance. Consequently, towing services within the City are "regulated" only to the extent the services are provided at the direction of the City, that is, when the City has control over the removal of a vehicle.  Stated differently, Defendants regulate the towing of vehicles, but only as it relates to towing at the direction of the Lancaster police department.  And these towing services are performed pursuant to each towing company's contract with the City.

Plaintiff agreed to contract with the City and participate in this program.  By contracting with the City, Plaintiff agreed to provide the towing services as set forth in the agreement and under the terms of the agreement.  Although Plaintiff alleges that it remained in substantial compliance with the terms of the Towing Service Rotation Agreement, it does not allege that it did not violate the terms of its agreement with the City.  The agreement provides that a violation of any term or condition of the agreement is sufficient cause for the removal of the contracting towing company to be removed from the towing rotation list.  After finding Plaintiff in violation of the agreement, Defendant Lancaster removed Plaintiff from the towing rotation list.  And Plaintiff's removal from the towing rotation list removed it from eligibility to perform towing services at the direction of the City.

The contractual relationships between the City and the towing companies participating in the towing rotation list serve to further the municipality's function of controlling and ensuring the

11

safety of its roadways.  And these towing services must be performed pursuant to the City's

agreement with the towing company.  The guidelines of the City's towing rotation policy,

implemented via the towing service rotation agreements, however, does not have the force and

effect of law with general applicability, and only governs conduct performed at the direction of

the City.  Thus, the City has not regulated the conduct of towing companies within the

municipality, as would be prohibited by the pertinent federal and state statutes.  Accordingly,

Plaintiff's preemption claim is without merit.

### 3.     42 U.S.C. § 1983 Claim

Plaintiff alleges that Defendants' conduct has deprived it of due process of law in violation

of the Fourteenth Amendment.  The crux of Plaintiff's second claim is that "Defendants, in

enforcing the tow rotation policy, have deprived Plaintiff of the same economic opportunities and

benefits afforded other competing towing companies."  (Pl.'s Mem. In Opp'n, p. 10).  Plaintiff

argues that it is legally entitled to inclusion on the towing rotation list if it is in compliance with all

applicable state law.

Plaintiff seeks relief under 42 U.S.C. § 1983 for the alleged violation of its constitutional

rights.  This statute states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress [. . .]

42 U.S.C. § 1983.  This statute " 'is not itself a source of substantive rights,' but merely provides

'a method for vindicating federal rights elsewhere conferred.' "  *Graham v. Connor*, 490 U.S.

386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To state a

claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant (1) acted under color of

state law to (2) deprive the plaintiff of a right secured by the constitution or a federal statute.

*Cassady v. Tackett*, 938 F.2d 693, 695 (6th Cir. 1991).

Plaintiff alleges that it was denied due process as guaranteed by the Fourteenth

Amendment to the United States Constitution.  The Fourteenth Amendment provides, in relevant

part, that no State shall "deprive any person of life, liberty or property, without due process of

law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has procedural and substantive

components.  As the Sixth Circuit Court of Appeals explained in *Howard v. Grinage*, 82 F.3d

1343, 1350 (6th Cir. 1996), "substantive due process prohibits the government's abuse of power

or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair

deprivations of protected life, liberty, or property interests without procedural safeguards."

Plaintiff asserts that it has a federal individual right to not be regulated by state or local law, and

that this right is enforceable under § 1983.

In *Petrey v. City of Toledo*, 246 F.3d 548 (6th Cir. 2001), the Sixth Circuit found that a

cause of action exists under § 1983 for a violation of § 14501(c)(1).  The *Petrey* court determined

that towing companies are an intended beneficiary of the statute's prohibition on state and local

regulation of motor carriers, and that the statute has no "comprehensive enforcement mechanism

that would preclude § 1983 relief for those injured due to unlawful state or local regulation of the

towing industry."  *Id.* at 565.  The parties argue over whether the *Petrey* decision continues to be

binding precedent in view of the United States Supreme Court decisions in *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273 (2002), and *Columbus v. Ours Garage and Wrecker Services, Inc.*, 536 U.S.

13

424 (2002).  At least one court has questioned the continued viability of the *Petrey* decision.  In

*Henry's Wrecker Serv. Co. of Fairfax County, Inc. v. Prince George's County*, 214 F. Supp.2d

541, 545 (D. Md. 2002), the United States District Court of Maryland reasoned that because the

Court in *Gonzaga* "tightened the test used to determine whether a statute creates federal rights,"

the *Petrey* court's analysis on this issue has been implicitly overruled and is no longer persuasive.

It is unnecessary, however, for this Court to settle the parties' dispute as to the continued viability

of the *Petrey* decision because Plaintiff cannot show a violation of § 14501(c)(1).

Plaintiff essentially argues that Defendants' regulation of towing services in the City and

Plaintiff's removal and continued exclusion from the towing rotation list deprive it of a property

interest without due process of law.  Plaintiff's argument, however, is based on a faulty premise –

that it is entitled to, or has a property right in, towing services performed at the direction of the

City.  Section 14501(c) does not prohibit a municipality from contracting with towing companies

to assist in towing services that are performed at the direction of the municipality.  Nor does it

require municipalities, that do contract with private companies, to contract with a particular

towing company or all eligible towing companies.  The statute prohibits states and political

subdivisions from enacting or enforcing a "law, regulation, or other provision having the force and

effect of law" relating to the pricing, routes, or service of any motor carrier.  As discussed above,

the City has not enacted or enforced any law, regulation, or other provision having the force and

effect of law, that regulates the price, route, or service of motor carriers within the City.  *Cf.*

*Petrey*, *supra*.  In sum, Plaintiff does not allege a violation of a federal right.

Accordingly, the Court concludes that Defendants are entitled to judgment as a matter of

law as to Plaintiff's § 1983 claim.

### 4. Tortious Interference with Economic Relations Claim

By its third claim against Defendants, Plaintiff contends that Defendants intentionally interfered with, and caused harm to, Plaintiff's business relationships.  It is well-settled that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed.  *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992); *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well"), and *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").  Having resolved Plaintiff's federal claims, only Plaintiff's tortious interference with business relationships claim remains.  Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over this state law tort action, and this claim will be dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court concludes that Defendants are entitled to judgment on the pleadings as to Plaintiff's federal preemption and § 1983 claims, and accordingly **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 14) as to these two claims. The Court also **DISMISSES** Plaintiff's state law claim without prejudice.

The Clerk shall remove Documents 14 and 18 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**


         *s/ George C. Smith*
         **GEORGE C. SMITH, JUDGE**
         **UNITED STATES DISTRICT COURT**